UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ZELDA SMITH,

       Plaintiff,

v.                                                  Case No. 2:07-cv-631
                                                  Honorable Patrick J. Duggan[*]

STATE OF FLORIDA DEPARTMENT
OF CORRECTIONS,

       Defendant.
_____/

## OPINION AND ORDER

This lawsuit arises from Zelda Smith's ("Plaintiff") employment and subsequent termination by the State of Florida Department of Corrections ("Defendant"). Plaintiff alleges that, during her employment, she was subjected to a hostile work environment on the basis of her race and that she was ultimately terminated from her position as a correctional probation officer because of her supervisor's discriminatory practices. Presently before the Court is a Motion for Summary Judgment filed by Defendant on February 2, 2009.[1] Plaintiff responded on March 10, 2009. Also pending before the Court is Plaintiff's Motion to Strike Affidavit of Pam Donelson and Supporting Memorandum, filed on March 13, 2009. Defendant responded to Plaintiff's motion on March 30, 2009. The Court now addresses

---

    [*]United States District Court Judge for the Eastern District of Michigan sitting by assignment.

    [1]Defendant filed an Amended Motion for Summary Judgment on February 17, 2009, to correct typographical errors and to ensure compliance with Local Rule 1.05. The content of the motion did not change.

both motions.

**I. Background**

Plaintiff began working for Defendant as a correctional officer in 2003. During 2005, Plaintiff applied for the position of correctional probation officer, was accepted, and attended Defendant's probation officer training academy. In December 2005, Plaintiff graduated from the academy and began working in Defendant's Punta Gorda probation office under the supervision of Manley Jaquiss ("Jaquiss"). Upon arrival at the Punta Gorda office, Plaintiff received a reduced caseload of 35-40 minimal risk offenders.[2] As with all new correctional probation officers, Plaintiff was to be on probationary status for one year. A fellow correctional probation officer, Richard Parks, was also assigned to help train Plaintiff in her new position.

On April 5, 2006, Jaquiss completed a performance review of Plaintiff's work. Jaquiss indicated that Plaintiff was meeting or exceeding all expectations. In the review, Jaquiss wrote that Plaintiff was an "effective communicator," was "self motivated," exhibited "extremely professional" conduct, and submitted assignments "as required in the proper format." Supervisor Jaquiss concluded, "CPO Smith is a strong addition to the 203 team and this dedication and display of her strong work ethic is noted and appreciated." (Pl.'s Mot. Ex. 1 at 79-84.)

Just two days after Plaintiff's performance review, Jaquiss transferred to Defendant's Fort Myer's office and Pam Donelson ("Donelson") became the new Senior Supervisor in

---

[2]The average caseload for a correctional probation officer is somewhere between 80 and 100 offenders of mixed risk levels.

2

Punta Gorda. According to Plaintiff, Donelson immediately treated her, an African American, with open contempt not demonstrated toward other non-minority probation officers. Plaintiff claims that Donelson subjected her work to more intense scrutiny and then demeaned and belittled her in front of others in the office on a daily basis for alleged mistakes and violations. Plaintiff claims that Donelson targeted her despite the fact that she made the same or fewer mistakes than other officers under Donelson's supervision. Plaintiff asserts that Donelson even went so far as to fabricate mistakes and violations in order to justify her negative treatment of Plaintiff. In private conversations, Plaintiff alleges that Donelson used derogatory names and referred to Plaintiff using the phrase "you people." At some point a stuffed monkey dressed in glasses to resemble Plaintiff appeared in Plaintiff's work area and Donelson failed to remove the monkey in response to Plaintiff's complaint until a second African American employee complained. According to Plaintiff, these events led her to complain about racial discrimination in the Punta Gorda office. (*See* Pl.'s Aff.; Def.'s Mot. Ex. 2 at 40-66.)

Plaintiff asserts that she attempted to submit a written complaint regarding the discrimination to her union but that her letter was returned unopened. Plaintiff then claims to have complained about Donelson's conduct to Defendant's Circuit Administrator, Mary Bauer; Defendant's Deputy Circuit Administrator, Peggy Monaco; and Defendant's Punta Gorda Correctional Probation Supervisor Diane LaPaugh. Plaintiff's complaint to Diane LaPaugh was allegedly made in Donelson's presence. Plaintiff asserts that Donelson responded by saying that Mary Bauer and Peggy Monaco were her friends and would do nothing to help Plaintiff. According to Plaintiff, the discrimination did indeed continue until

3

she was terminated in late August 2006. (*See* Pl.'s Aff. ¶¶ 21-28.)

Meanwhile, Donelson presents an entirely different version of the events that led to Plaintiff's termination. Donelson maintains that she always wanted to see Plaintiff succeed as a correctional probation officer but that she had increasing concerns regarding Plaintiff's performance between June and August 2006. During that time, Plaintiff's caseload was gradually increased to a more normal level but Plaintiff was unable to handle it. Donelson asserts that Plaintiff exhibited difficulty in retaining information and training, struggled to write coherent and accurate reports, failed to make appropriate use of essential management reports and systems, and ineffectively communicated. Donelson attempted to help Plaintiff adjust to the workload by assigning additional officers to assist in Plaintiff's training and by personally training Plaintiff. Nonetheless, Donelson alleges that Plaintiff's poor performance was increasingly problematic and that Plaintiff ultimately became a risk to public safety. (*See* Def.'s Mot. Ex. 1 at 16-17, 22-28, 64-72.)

Donelson asserts that Plaintiff's dealings with three separate offenders led to her recommendation that Plaintiff be terminated. In one instance, Plaintiff allegedly misinformed an offender regarding the status of his fines causing the offender to become violent. Donelson asserts that the problem arose from Plaintiff's inability to use Defendant's computer systems. In the second case, Plaintiff attempted to complete a home visit for an offender who had been revoked and assigned to a new officer. Donelson allegedly received phone calls from the offender's family members who complained that Plaintiff was incompetent. In the final instance, Plaintiff allegedly falsified an offender's file by documenting that she made a home visit on a day that she called in sick. Based on these

events and Plaintiff's otherwise poor performance, Donelson recommended that Plaintiff be terminated in August 2006. This recommendation went through two levels of management above Donelson before being passed along to Defendant's Workforce Compliance Office and General Counsel. Defendant's general counsel approved Plaintiff's termination on August 28, 2006. (*See* Def.'s Mot. Ex 1 at 18-21, 52-57.)

In the present lawsuit Plaintiff alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act. In counts I and III, Plaintiff alleges federal and state claims that Defendant discriminated against her by subjecting her to disparate treatment on the basis of her race. In counts II and IV, Plaintiff alleges federal and state claims that Defendant allowed her to be harassed by the hostile work environment at the Punta Gorda office.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106

S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III. Employment Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In this case, Plaintiff alleges that Donelson subjected her to disparate treatment and a hostile work environment because of her race. Defendant argues that Plaintiff has failed to set forth sufficient evidence to support these claims.

## A. Disparate Treatment

Plaintiffs can prove Title VII employment discrimination claims with direct or circumstantial evidence. *Carter v. City of Miami*, 870 F.2d 578, 581 (llth Cir. 1989). "Direct

evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Id.* at 581-82. In analyzing allegedly discriminatory statements, however, "only the most blatant remarks, whose intent could be nothing other than to discriminate," qualify as direct evidence. *Id.* at 582. In this case, Plaintiff alleges that Donelson made derogatory comments but testified in her deposition that she could not remember the specific words or phrases used by Donelson.[2] (Def.'s Mot. Ex. 2 at 47.) Without more, Plaintiff fails to provide direct evidence of discrimination.

Absent direct evidence, discrimination claims are subject to the *McDonnell Douglas*[3] burden shifting analysis. *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Pursuant to the approach, a plaintiff must first establish a prima facie case of discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The burden of "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. If the plaintiff establishes a prima facie case, it is presumed that the employer unlawfully discriminated against him or her until the employer articulates some legitimate, non-discriminatory reason for the employment decision. *Combs*, 106 F.3d at 1528. If the employer makes such a showing, the plaintiff must then prove by a preponderance of the evidence that the articulated reason is false and offered as pretext for the unlawful

---

[2]In her affidavit, Plaintiff alleges that Donelson made references to her using the phrase "you people." The use of this phrase alone, especially without more detailed information regarding the context in which it was used, is insufficient to qualify as direct evidence of discrimination.

[3]411 U.S. 792, 93 S. Ct. 1817 (1973).

discrimination. *Id.* But, "[i]n order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1994).

Throughout this process the burden of persuasion remains on the plaintiff. *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir.), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998). In regard to the present motion, however, "a plaintiff is entitled to survive summary judgment . . . if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs*, 106 F.3d at 1529.

**1. The Prima Facie Case**

In this case, Defendant argues that Plaintiff failed to sustain her burden to present a prima facie case of race discrimination. Under the *McDonnell Douglas* framework, Plaintiff must establish that: "(1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorably; and (4) [she] was qualified to do the job." *Holifield*, 115 F.3d at 1562. Because Plaintiff is African American and was terminated from her position with Defendant, the first two requirements are not at issue.

**a. Similarly Situated Employees**

In the present motion, the parties dispute whether Plaintiff has submitted sufficient evidence to establish that Defendant, and more specifically Donelson, treated similarly situated individuals outside of Plaintiff's class more favorably. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she]

and the employees are similarly situated in all relevant respects." *Id.* Where, as here, the employer alleges that it terminated the plaintiff for poor performance, identification of similarly situated employees requires consideration of "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

Defendant argues that Plaintiff cannot meet her burden on this element of the prima facie case because there are no similarly situated employees with which Plaintiff can be compared. As an initial matter, Defendant submits that Plaintiff cannot be compared to higher ranking senior probation officers and specialist probation officers in the Punta Gorda office. The Court disagrees. "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Dep't of Children and Youth Svcs.*, 172 F.3d 786, 793 (11th Cir. 1990). Accordingly, courts have found it sufficient when "the individuals with whom the plaintiff seeks to compare [herself] . . . have (1) dealt with the same supervisor, (2) been subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Sanguinetti v. United Parcel Svc., Inc.*, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000). The higher-ranking officers in the Punta Gorda office were supervised by Donelson and, while they may have had more duties than Plaintiff, the duties for all the officers are essentially the same. (Def.'s Mot. Ex. 1 at 48-51.) Under these circumstances,

9

job title alone will not prevent consideration of other Punta Gorda officers as similarly situated.

Defendant makes the additional argument, however, that no other officers have been involved in or accused of the same misconduct as Plaintiff. Specifically, Defendant maintains that Plaintiff consistently underperformed compared to her colleagues in regard to both the quantity and severity of mistakes. Plaintiff, however, asserts that Donelson fabricated many of the mistakes and violations. According to Plaintiff, Donelson's fabrications are evidenced by the contrast between Jaquiss's April performance evaluation and Donelson's purported reasons for termination. Furthermore, Plaintiff specifically alleges that, among other things, Donelson held reports so as to make them appear untimely. In a more egregious example, Plaintiff alleges that Donelson orchestrated the alleged "falsification of records" by directing Plaintiff to document the unmade home visit on the promise that Donelson would make the visit herself. (Pl.'s Aff. ¶¶ 29-43.)

Defendant attempts to avoid this line of argument by noting that it is irrelevant whether Plaintiff actually committed the alleged violations; an employer can rebut a prima facie case of disparate treatment "by showing that it honestly believed the employee committed the violation." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). In this case, however, Plaintiff has sufficiently challenged Defendant's "honest belief" by alleging that Donelson, a supervisor acting on Defendant's behalf, fabricated the alleged violations. Viewing the evidence in the light most favorable to Plaintiff, as the Court must for the present motion, there is reason to believe that at least some of the alleged errors and violations were fabricated in furtherance of discriminatory motives. If that is the case, other

Punta Gorda officers may be similarly situated to Plaintiff in regard to the number and severity of mistakes made.

As to this latter issue, Plaintiff has submitted affidavits from herself and two coworkers indicating that she made the same or fewer errors than the average first year officer and, in some instances, made fewer errors than more experienced officers in the Punta Gorda office.[4] At this stage in the proceeding, it is not up to the Court to assess the credibility of the affiants or to weigh the evidence. *Combs*, 106 F.3d at 1538. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has supported her allegation that non-minority, similarly situated coworkers received more favorable treatment.

**b. Qualified for the Job**

Defendant also argues that Plaintiff failed to establish the last requirement of the prima facie case—that she was qualified for the job from which she was terminated. According to Defendant, Plaintiff's alleged mistakes and violations rendered her incapable of performing the essential job functions of a correctional probation officer. Defendant's argument is misplaced.

As noted above, Plaintiff's burden to establish a prima facie case is "not onerous" and, where a plaintiff has been discharged from a previously held position, the Eleventh Circuit has held that the plaintiff need not submit proof of qualification. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999). In such circumstances,

---

[4] Plaintiff also gave testimony on this topic at her deposition. (Def.'s Mot. Ex. 2 at 52.)

allegations of poor performance should only be considered "*after* a prima facie case has been established, when a court evaluates the pretextual nature of an employer's proffered nondiscriminatory reasons for termination." *Id.* "The reason for this modification is that in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987).

Although Plaintiff did not hold the position of correctional probation officer for "a significant period of time," there is sufficient evidence in this case to conclude that she is qualified for the position. After applying for and being accepted as a correctional probation officer, Plaintiff completed Defendant's probation officer academy. Plaintiff began working in the Punta Gorda office in December 2005 and received a positive performance review over three months later in April 2006. Under these circumstances, Defendant's allegations of poor performance do not negate Plaintiff's qualification for the position, although they may support a claim that Plaintiff was terminated for legitimate, non-discriminatory reasons. *See de la Cruz v. N.Y. City Human Resources Admin. Dep't of Soc. Svcs.*, 82 F.3d 16, 21 (2d Cir. 1996) ("[A] performance evaluation that is positive overall is sufficient to withstand summary judgment at the *prima facie* stage of analysis."). For these reasons, the Court concludes that Plaintiff satisfied her burden to establish a prima facie case of discrimination.

**2. Legitimate, Non-Discriminatory Reasons and Pretext**

To avoid the inference of discrimination created by Plaintiff's establishment of a prima facie case, Defendant must articulate a legitimate, non-discriminatory reason for the termination. Not surprisingly, Defendant argues that Plaintiff's poor performance justified

its action. Having articulated a reason for the termination, the burden falls on Plaintiff to present "evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext . . . ." *Hairston*, 9 F.3d at 921.

As discussed above, Plaintiff has presented evidence challenging Defendant's assertion that her termination was justified by poor performance. Specifically, Plaintiff contends that the mistakes and violations relied on by Defendant were either fabricated by Donelson or were no more numerous or serious than errors and violations committed by other non-minority employees.[5] If Plaintiff's evidence is believed, a reasonable jury could conclude the Defendant's articulated reason is pretext. Therefore, summary judgment as to Plaintiff's disparate treatment claim is denied.

**B. Hostile Work Environment**

Plaintiff also alleges that Defendant violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment. A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). To succeed on a hostile work environment claim, a plaintiff must prove:

> (1) that he [or she] belongs to a protected group; (2) that he [or she] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or

---

[5]Plaintiff's argument is supported by her deposition testimony, her affidavit, and the affidavits of two coworkers.

> pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In this case, Plaintiff cannot meet her burden.

To satisfy the fourth element of a hostile work environment claim, a plaintiff must establish that the harassing conduct was severe or pervasive according to both objective and subjective standards. *Id.* In other words, the harassing conduct "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" *Id.* (*quoting Harris*, 510 U.S. at 21, 114 S. Ct. at 370). Whether conduct meets the objective requirement depends on the totality of the circumstances. *Id.* Factors commonly considered include "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Plaintiff attempts to establish her hostile work environment claim by referencing two separate types of alleged harassment by Donelson. First, Plaintiff alleges that Donelson's daily criticism about her work performance created a hostile work environment. Plaintiff asserts that Donelson subjected her work to intense scrutiny and belittled her for errors on a daily basis in front of her coworkers and offenders. In the last month before her termination, Plaintiff alleges that Donelson suggested, in front of others, that she transfer to her old position as a corrections officer. This conduct, if true, likely embarrassed Plaintiff,

14

but it does not form the basis of a hostile work environment claim because the alleged harassment is not because of Plaintiff's race. And to the extent that Plaintiff testified that Donelson also used derogatory names in private, the fact that Plaintiff cannot remember the exact words used by Donelson suggests that race-based comments were not severe or pervasive.

As a second example of the allegedly hostile work environment to which she was subjected, Plaintiff references the appearance of a stuffed monkey in her work area. Plaintiff alleges that she complained to Donelson about the monkey but Donelson failed to remove the monkey for several days until another African American employee complained. While such conduct may be considered harassing, this single incident is not objectively severe enough to establish a hostile work environment claim. Therefore, Defendant's motion for summary judgment is granted as to this claim.

## IV. Retaliation

Title VII of the Civil Rights Act of 1964 also prohibits employers from retaliating against an employee who opposes unlawful discrimination, 42 U.S.C. § 2000e-3(a), and Plaintiff dedicates a portion of her response brief to this issue. Plaintiff failed, however, to allege a retaliation claim in her amended complaint. Therefore, the Court does not address this argument.

## V. Florida Employment Discrimination Law

In addition to her federal claims, Plaintiff sets forth identical disparate treatment and hostile work environment claims under Florida state law. *See* Fla. Stat. § 760.10. Claims brought under the Florida Civil Rights Act are subject to the same analysis as Title VII

claims. *See Speedway SuperAmerica, LLC v. Dupont*, 933 So. 2d 75, 79-80 (Fla. Dist. Ct. App. 2006). Therefore, for the reasons stated above, Defendant's motion for summary judgment is denied as to Plaintiff's disparate treatment claim and granted as to Plaintiff's hostile work environment claim.

## VI. Motion to Strike

Finally, Plaintiff filed a motion to strike the affidavit of Pam Donelson attached to Defendant's motion for summary judgment. Plaintiff complains that the content of Donelson's affidavit contradicts her deposition testimony and must be stricken as a sham. Having reviewed both Donelson's deposition and affidavit, the Court concludes that the affidavit merely expands on the deposition testimony without contradicting it. Furthermore, the Court notes that striking Donelson's affidavit would not affect the outcome of the summary judgment motion. Therefore, Plaintiff's motion to strike is denied.

## VII. Conclusion

Viewing the record evidence in the light most favorable to Plaintiff, there remain genuine issues of material fact as to whether Donelson fabricated alleged mistakes and violations by Plaintiff and used poor performance as a pretext for Plaintiff's termination. At the same time, however, the record evidence fails to support a finding that Plaintiff was subjected to a hostile work environment on the basis of her race.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's disparate treatment claims (counts I and III) and **GRANTED** as to Plaintiff's hostile work environment claims (counts II and IV).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Affidavit of Pam Donelson and Supporting Memorandum is **DENIED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Date: May 27, 2009

Copies to:
James Moten Thompson, Esq.
Sabrina E. Redd, Esq.